UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| ROGER LEE WILLIAMS, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:15-CV-483-TAV-CCS |
| | ) | | |
| NANCY A. BERRYHILL,[1] | ) | | |
| Acting Commissioner of Social Security, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM OPINION

This case is before the Court on plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 20, 21] and defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 24, 25]. Roger Lee Williams ("plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will deny plaintiff's motion, and grant the Commissioner's motion.

## I.    Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began November 8, 2011 [Tr. 156–57, 158–64]. After his application was denied initially and

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as defendant in this case.

upon reconsideration, plaintiff requested a hearing before a judge [Tr. 142]. On March 4, 2014, a hearing was held before the ALJ to review the denial of plaintiff's claim [Tr. 27–64]. On May 29, 2014, the ALJ found that plaintiff was not disabled [Tr. 7–26]. The Appeals Council denied plaintiff's request for review [Tr. 1–4]. Thus, the decision of the ALJ is the final decision of the Commissioner.

Having exhausted his administrative remedies, plaintiff filed a complaint with this Court on October 27, 2015, seeking judicial review of the Commissioner's final decision under § 405(g) of the Social Security Act [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    The ALJ's Findings

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2.    The claimant has not engaged in substantial gainful activity since November 8, 2011, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3.    The claimant has the following severe impairments: status post right rotator cuff surgery times two, mild osteoarthritis of the acromioclavicular joint, cervical spine degenerative disc disease, small cystic lesion on the left foot, obesity, borderline intellectual functioning, and mood disorder (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

2

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry at the light exertional level as defined in 20 CFR 404.1567(b) and 416.967(b), stand/walk for 15 minutes at one time without interruption, unlimited sitting, and no overhead reaching with the right upper extremity. He is right hand dominant. He is able to understand, remember, and carry out simple routine repetitive instructions and tasks. He is able to sustain adequate attention and concentration for the performance of the previously described tasks. He can perform occasional social interactions and is able to adapt to infrequent/gradual changes. He can do no work requiring literacy or math skills.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on July 14, 1977 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)) [Tr. 12-21].

3

## III.    Standard of Review

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed.  42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (*citing Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)) (internal citations omitted).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (*quoting Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility."

*Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*citing Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (*citing Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. Analysis

This case involves an application for DIB and SSI benefits. An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), § 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see* 20 C.F.R. §§ 404.1505(a), 415.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.   If claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (*citing Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, plaintiff alleges three errors committed by the ALJ. First, plaintiff argues that the ALJ erred when he concluded at step three of the disability analysis that plaintiff did not satisfy the criteria for Listing 12.05(B) or (C) [Doc. 21 p. 21]. Second, plaintiff asserts that substantial evidence does not support the ALJ's assignment of little weight to the opinion of consultative examiner Martha Wike, Ph.D., who diagnosed plaintiff with mild mental retardation [*Id.* at 24–25]. Finally, plaintiff contends that the ALJ erred in rejecting the testimony of plaintiff's wife and mother, as well as finding plaintiff's subjective allegations less than fully credible [*Id.* at 22–24]. The Court will address each alleged error in turn.

### A.    Listing 12.05(B) and (C)

Plaintiff first argues that the ALJ erred at step three of the disability analysis when he concluded that plaintiff did not meet or equal Listing 12.05(B) or (C) for intellectual disorder.

At step three, a claimant may be found disabled if his impairment meets, or medically equals, one of the listings in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). Only when an

impairment satisfies each of a listing's criteria will the impairment be found to meet that listed impairment. *Id.* at § 404.1525(d).

To meet or equal Listing 12.05(B) or (C), plaintiff must provide evidence of the following:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when . . .

> B.  A valid verbal, performance, or full scale IQ of 59 or less;

> OR

> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.[2]  Accordingly, plaintiff must satisfy the diagnostic description for intellectual disorder — significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to attainment of age 22 — and satisfy the criteria in paragraphs B and/or C.

In the disability determination, the ALJ observed that plaintiff attained IQ scores that fell within the range of intellectual disability when he underwent a consultative psychological evaluation by Martha Wike, Ph.D., in July 2012 [Tr. 13.].  During the

---

[2] Effective January 17, 2017, changes to the Listing of Impairments were implemented which included revisions to the criteria used to evaluate claims involving mental disorders in adults.  The Court reviews the Commissioner's final decision using the rules that were in effect at the time the decision was issued.  Thus, the criteria of Listing 12.05(B) and (C) as cited herein reflect the listing's criteria prior to the rule change.

psychological evaluation, plaintiff was administered the Wechsler Adult Intelligence Scale Fourth Edition ("WAIS-IV") and attained a verbal comprehension index score of 68, a perceptual reasoning index score of 71, a working memory index score of 66, a processing speed index score of 56, and a full scale IQ score of 60 [Tr. 13, 457]. The ALJ, however, credited IQ scores plaintiff achieved on the Wechsler Intelligence Scale for Children Third Edition ("WISC-III") when he was 15-years-old [Tr. 13, 286]. At that time, plaintiff attained scores above the criteria's cut-off: a verbal and performance IQ score of 75 and a full scale IQ score of 78 [*Id.*]. Because these earlier scores fell into the high borderline range of intellectual functioning, the ALJ concluded that they were evidence that plaintiff "does not meet the criteria of 12.05B or 12.05C, because he did not have significantly sub average general intellectual functioning prior to the age of 22" [*Id.*].

Relying on Sixth Circuit case law, plaintiff argues that IQ scores of 70 and below attained prior to age 22 are not mandatory to satisfy the diagnostic description on the listing [Doc. 21 p. 21]. In addition, plaintiff submits that the ALJ made a factual error when he noted that the WISC-III was administered when plaintiff was 15-years-old [*Id.*]. Plaintiff asserts that the testing was actually administered in 1989 when he was 12-years-old, which "was at a much earlier time in the Plaintiff's developmental period," and that this factual error justifies remand [*Id.*]. The Commissioner concedes that the WISC-III was administered when plaintiff was 12-years-old, but argues that the difference in age is

9

not probable under the listing and that plaintiff's IQ scores achieved at age 12 were considered to be a valid measure of plaintiff's intellectual potential [Doc. 25 p. 7].

As suggested by plaintiff, the Sixth Circuit Court of Appeals has held that "[w]hile the claimant *may* use a qualifying IQ score before the age of 22 to demonstrate that his subaverage intellectual functioning initially manifested during his developmental period, . . . a claimant is by no means required to produce an IQ score obtained prior to age 22." *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007). *West* does not, however, support plaintiff's position that it was error for the ALJ to rely on the IQ scores plaintiff achieved as a child. While IQ scores achieved prior to age 22 are not mandatory to prove manifestation of an impairment, they are relevant for determining the onset of a claimant's subaverage intellectual functioning. In *Dragon v. Comm'r of Soc. Sec. Admin.*, 470 F. App'x 454 (6th Cir. 2012) the ALJ disregarded the claimant's qualifying IQ score because "testing was 14 years ago and occurred while [Dragon] was a child." *Id.* at 461. The Sixth Circuit held that "[d]isregarding the scores on this ground misconstrues the relevance of the scores; indeed, *an older score was relevant* to establish the manifestation of Dragon's impairment before the age of 22." *Id.*

Here, the Court finds that plaintiff underwent intelligence testing when he was 12-years-old, not 15-years-old as found by the ALJ [Tr. 13, 285–86]. While plaintiff argues that his scores were "at a much earlier time in plaintiff's developmental period," the Court finds the three-year age difference immaterial as the IQ scores at issue, the scores achieved on the WISC-III, were achieved prior to age 22. In fact, when plaintiff was

10

reevaluated three years later at the age of 15, school records indicate that the WISC-III scores were "believed to be a valid measure of intellectual potential" [Tr. 286]. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) ("The narrative report that accompanies the test results should comment on whether the I.Q. scores are considered valid and consistent with the developmental history and the degree of functional limitation."). Moreover, plaintiff provides no support for the proposition that the ALJ's factual error justifies remand, and the Court is not aware of any caselaw, regulation, or agency rule that would support plaintiff's position.

Furthermore, the Court finds no error in the ALJ's reliance on the IQ scores achieved on the WISC-III to demonstrate that plaintiff does not meet the diagnostic description of Listing 12.05(B) and (C). Plaintiff simply argues that a qualifying IQ score prior to age 22 is not mandatory. While this is true, *West* does not prohibit an ALJ from relying on IQ scores achieved prior to age 22 to demonstrate the manifestation, or lack thereof, of an impairment. *See Dragon*, 470 F. App'x at 461.

Therefore, the Court finds that the ALJ's reliance on plaintiff's WISC-III test scores achieved when he was 12-years-old was not error, and plaintiff's arguments to the contrary are not well-taken.

### B. Consultative Examiner Martha Wikes, Ph.D.

Plaintiff next argues that the ALJ erred in giving little weight to the opinion of Dr. Wikes.

Dr. Wikes performed a consultative examination on July 11, 2012 [Tr. 454–58]. During this examination, plaintiff reported a work history which included various jobs such as cleaning hospital offices, stocking, delivering produce, and changing oil in cars [Tr. 454]. Plaintiff explained that he had been fired on three or four occasions due to excessive absences and medical problems [*Id.*]. As to activities of daily living, plaintiff stated that he is able to dress and bathe himself (sometimes twice a day because he perspires from working outside), but that he needs help putting on his shirt and washing his back and hair due to shoulder pain [Tr. 456]. Plaintiff provided that he relies on his wife, sister, and mother to prepare meals, grocery shop, and clean the house [*Id.*]. He also provided that he has a driver's license but "does not drive unless he absolutely has to" [*Id.*]. Plaintiff reported that he gets along well with some people, and poorly with others, depending on the day, and that he spends most of his time with his wife and son [Tr. 457].

During the examination, plaintiff was unable to perform serial 7s but could correctly count backwards from 20 [Tr. 455]. His concentration appeared fair, his fund of knowledge appeared marginally adequate as he was able to name two of the last four presidents, and his delayed memory was found to be a potential problem as he was unable to recall more than one of three simple objects after a brief delay [*Id.*]. In addition, during the examination, plaintiff's abstract thinking seemed poor, his judgment and insight were fairly good, and he seemed to have somewhat limited insight into his own

12

problems [*Id.*]. Dr. Wike opined that plaintiff's "[i]ntellectual functioning falls within the extremely low range and he is probably functionally illiterate" [Tr. 456].

In addition to the WAIS-IV being administered as described above, the Wide Range Achievement Test – Fourth Revision ("WRAT-4") was also administered [Tr. 457]. On the WRAT-4, plaintiff achieved a standard score of 62 on the word reading subtest which corresponds to a grade equivalency of 2.4, and earned a score of 55 on the math computation subtest, which corresponds to a grade equivalency of 1.7 [*Id.*].

Based upon the clinical interview, achievement testing, and examination, Dr. Wike diagnosed plaintiff with depressive disorder, not otherwise specific, and mild mental retardation [Tr. 458]. As to plaintiff's ability to perform work-related activities, Dr. Wike opined that plaintiff's ability to understand and remember instructions was moderately to markedly impaired, his ability to sustain attention and concentration was moderately impaired, his ability to interact with other people was moderately to markedly impaired, and his ability to adapt to changes in his routine or work-life settings was markedly impaired [*Id.*].

The ALJ recounted Dr. Wike's work-related limitations and assigned the opinion little weight. [Tr. 19]. The ALJ stated that Dr. Wike appeared to rely heavily on plaintiff's IQ scores attained on testing administered during the consultative examination, but also that other evidence in the record supported less restrictive limitations:

> However, the totality of the evidence, including the claimant's adaptive functioning and the results of IQ testing that the claimant underwent during his school years do not support this opinion. For instance, the claimant has successfully worked as a lubrication servicer, which is semiskilled work,

13

with SVP of four, and he has obtained a valid driver's license. As previously discussed, when the claimant underwent IQ testing when he was 15 years, 6 months old, his scores were in the borderline range of intellectual functioning, rather than in the range of intellectual disability [*Id.*].

Plaintiff argues that his adaptive functioning skills do not support the ALJ's conclusion [Doc. 21 at 24]. Adaptive functioning, within the meaning of the diagnostic description of Listing 12.05(B) and (C), includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West*, 240 F. App'x at 698. "The Plaintiff 'must put on evidence indicating that he had adaptive functioning deficits during his developmental period.'" *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) (internal citation omitted). Plaintiff argues that possessing a driver's license and working as a lubrication servicer fall short of demonstrating that his adaptive functioning skills were greater than those opined by Dr. Wike [Doc. 21 p. 24–25]. The Commissioner counters by arguing that the ALJ's decision recognizes additional evidence beyond plaintiff's job as lubrication servicer and possessing a driver's license to support the conclusion that plaintiff did not experience listing level deficits in adaptive functioning [Doc. 25 p. 7].

The Court agrees with the Commissioner and finds that substantial evidence supports the ALJ's decision to give little weight to Dr. Wike's opinion. In reaching this conclusion, the Court notes that the ALJ considered a myriad of evidence beyond plaintiff having a driver's license and plaintiff's job as a lubrication servicer in assessing plaintiff's adaptive functioning. The ALJ discussed plaintiff's activities of daily living,

14

observing that plaintiff reported that he watched movies and television, read, bathed twice a day, could dress himself but needed assistance to put his shirt on due to shoulder pain, and sat on the couch with his son [Tr. 14]. As a result, the ALJ found that plaintiff had only moderate restrictions in the area of daily living activities [*Id.*].

The ALJ also found that plaintiff had only moderate difficulties in the area of social functioning as plaintiff reported that he spent time with family members, talked to family members on the phone daily, attended church three times a week, and visited his wife's grandparent's house four days a week [*Id.*]. In addition, the ALJ noted that plaintiff demonstrated no abnormal social behaviors during the administrative hearing and reported to Dr. Wike that he got along well with some people and poorly with others depending upon the day [*Id.*]. Similarly, the ALJ found that plaintiff had moderate difficulties with concertation, persistence, and pace [*Id.*]. In this regard, the ALJ noted that plaintiff was able to understand and follow the hearing proceedings including all lines of questioning, that Dr. Wike found plaintiff's concentration was "fair," and while plaintiff was unable to perform serials 7s, he could count backwards from 20 and could recall one of three simple objects after a brief delay [*Id.*].

Plaintiff, however, cites to testimony during the administrative hearing as evidence that he cannot function outside of a highly supportive living arrangement [*Id.* at 25]. Specifically, plaintiff argues that his wife had to fill out job applications for him and that he received help from family and friends in securing employment because he cannot read or write [Tr. 42–43]. As to the job of lubrication servicer, plaintiff testified that while he

15

could change oil in cars, he relied on his brother and co-worker to give him the correct filters to use because he could not read or understand which filters he needed [*Id.*]. The Court notes that plaintiff reported he likes to read books as a coping mechanism when he is stressed [Tr. 518], and that he completed a 12-page function report which required that he respond to a variety of short-answer and multiple choice questions [Tr. 205]. Moreover, plaintiff does not cite illiteracy or mental impairment in connection with his application for disability benefits or as a source that limits his ability to work [Tr. 178, 198–205, 454]. Regardless, the ALJ considered plaintiff's testimony [Tr. 16] and cited other evidence [Tr. 14] that demonstrated greater adaptive functioning skills than those that plaintiff alleged. Further, the ALJ precluded any work that required literacy from plaintiff's residual functional capacity ("RFC") [Tr. 15].

Moreover, plaintiff points to testimony in which he explained that he was unable to manage his medical treatment or finances on his own and required the assistance of his wife [Tr. 44–45]. Again, the ALJ considered plaintiff's allegations in this regard [Tr. 16] but found that plaintiff was only moderately limited in his activities of daily living as he reported he was largely able to care for himself and any assistance he required was due to shoulder pain, not intellectual difficulties [Tr. 14]. Indeed, plaintiff reported that he could pay bills, count change, handle a savings account, and use a checkbook or money orders [Tr. 202]. Nonetheless, plaintiff's RFC takes into account his alleged limitations by restricting him to simple, routine, and repetitive instructions and tasks and precludes any work that requires math skills [Tr. 15].

16

Plaintiff further asserts that because Dr. Wike found plaintiff markedly impaired in adaptive functioning despite having a driver's license, by finding otherwise the ALJ impermissibly substituted his own opinion for that of a trained medical professional [Doc. 21 p. 25]. The Court is not persuaded by this argument. As described above, the ALJ relied on evidence other than plaintiff possessing a driver's license to demonstrate that he did not have more than moderate difficulties in adaptive functioning. *See Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 401 (6th Cir. 2016) ("[D]etermining how certain diagnoses and symptoms bear on a claimant's capacity to work is not exclusively a 'medical judgment,' but a matter explicitly within the ALJ's purview.") (citing 20 C.F.R. § 416.929(c)(1)). Moreover, the ALJ relied on the opinion of state agency psychological consultant George Livingston, Ph.D., who opined that plaint has fewer limitations than those described by Dr. Wike. *Cf. Grecol v. Halter*, 46 F. App'x 773, 777 (6th Cir. 2002) ("But when there is no competing evidence, the ALJ is not permitted to substitute his opinions for those of the examining doctors."). Dr. Livingston assessed limitations consistent with plaintiff's RFC, namely, that plaintiff could understand and remember simple tasks with normal supervision and work breaks, that he could sustain concertation and persistence for the same during an eight-hour workday, that he could interact with others within said restrictions, and that he could set goals and adapt to infrequent change [Tr. 19-20, 99–107]. Therefore, contrary to plaintiff's argument, the Court finds that the ALJ did not substitute his own views for those of the medical professionals.

"The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination." *Alfich v. Colvin*, No. 3:14-0577, 2014 WL 6612068, at *6 (M.D. Tenn. Nov. 20, 2014) *adopted by* No. 3-14-0577, 2014 WL 7140031 (M.D. Tenn. Dec. 12, 2014) (citing 42 U.S.C. § 405(g)). In this case, the Court finds that the ALJ's discussion of plaintiff's adaptive functioning skills, his IQ scores achieved prior to age 22, and the medical evidence in the record, including the medical opinions, provided a reasonable basis for the ALJ to conclude that Dr. Wike's opinion was entitled to little weight. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Accordingly, plaintiff's argument that the ALJ erred in giving little weight to Dr. Wike's opinion is not well-taken.

## C. Credibility

Finally, plaintiff argues that the ALJ erred in finding plaintiff's testimony, as well as testimony provided by plaintiff's mother, Vera Crowe, and plaintiff's wife, Amanda Williams, less than fully credible.

Ms. Crowe testified that plaintiff lived with her until seven years ago when plaintiff met his wife [Tr. 50, 52]. She further stated that plaintiff had dropped out of high school and immediately started working [Tr. 50]. She also explained that she assisted plaintiff with doctors' appointments, taking medication, and handling finances until Ms. Williams took over [Tr. 50–51].

18

Ms. Williams similarly testified that she has known plaintiff for seven years and handled plaintiff's money and scheduled his doctors' appointments [Tr. 54–55]. She stated that plaintiff had trouble recalling her birthday or their anniversary and that he could no longer mow, do yard work, or take out the trash because of hip and shoulder pain [Tr. 55–57].

The ALJ found the forgoing testimony less than fully credible because "treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that the claimant alleges" [Tr. 18]. The ALJ also found some of plaintiff's activities inconsistent with disabling limitations [*Id.*]. For example, the ALJ observed that plaintiff reported riding a four-wheeler in September 2012, when he flipped the vehicle and hurt his knee [*Id.*]. Additionally, the ALJ noted treatment records in which plaintiff reported lifting a washer in January 2013, which caused him to experience persistent pain in his right shoulder [*Id.*]. The ALJ concluded that Ms. Crowe and Ms. Williams's testimony "may accurately describe what the claimant has chosen to do, but they do not establish that the claimant is disabled" [Tr. 19].

Plaintiff argues that the two examples cited by the ALJ as activities inconsistent with plaintiff's disabling allegations do not constitute substantial evidence [Doc. 21 p. 22]. Plaintiff explains that his four-wheeler accident occurred several years prior to September 2012, contrary to the ALJ's finding [*Id.*]. In addition, plaintiff asserts that he admitted in his hearing testimony that he lifted a washer in January 2013, "thereby undermining a finding that plaintiff is less than fully credible" [*Id.*]. Plaintiff further

points out that lifting the washer exacerbated his already existing rotator cuff issues which necessitated additional surgery [*Id.*]. He also asserts that his subjective allegations are consistent with, and supported by, his mother's and wife's testimony that he is unable to read or write and requires a highly supportive living arrangement [*Id.* at 25].

Social Security Ruling 06-03p provides that adjudicators must consider other-source opinions[3] and "generally should explain the weight given to opinions from these 'other sources.'" 2006 WL 2329939, at *6 (Aug. 9, 2006). "But other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 550 (6th Cir. 2014). While other source opinions may provide evidence as to the severity of a claimant's impairment, as well as the effects that the impairment has on the claimant's ability to work, 20 C.F.R. §§ 404.1513(d), 416.913(d), they "cannot establish the existence of a disability," *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 398 (6th Cir. 2014).

Here, the Court observes that there is some ambiguity as to when plaintiff's four-wheeler accident occurred. The treatment note referenced by the ALJ, dated September 2012, states that plaintiff has had right knee problems for two years, and then cites a four-wheeler accident as well as other medical care and further injuries that have occurred. The treatment note does not specifically state when the four-wheeler accident occurred. However, even assuming that the accident occurred two years' prior, plaintiff fails to explain how this impacts, or is relevant to, the ALJ's adverse credibility finding.

---

[3] In relevant part, "other sources" include non-medical sources such as spouses and parents. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).

Additionally, the Court notes that the ALJ recounted the event for purposes of demonstrating that plaintiff was engaging in activity that contradicted his alleged disabling limitations, not that plaintiff was untruthful in his testimony. Regardless of its impact on the ALJ's credibility finding, the lifting of the washer had other probative value as evidence that plaintiff was not as limited as he alleged.

Plaintiff further argues that his mother's and wife's testimony is consistent with plaintiff's subjective allegations that he is dependent on their daily assistance and other objective medical evidence such as Dr. Wike's opinion. However, the ALJ provided a reasoned explanation, which the Court has found is supported by substantial evidence, for finding that plaintiff was only moderately limited in his activities of daily living, social functioning, and concentration, persistence, and pace, and for assigning little weight to Dr. Wike's opinion. Therefore, the Court finds that the ALJ did not err in weighing the testimony provided by plaintiff's mother and wife.

Accordingly, plaintiff's allegation of error in this regard is also without merit.

## V.     Conclusion

Based upon the foregoing, the Court will **DENY** plaintiff's Motion for Summary Judgment [Doc. 20], and **GRANT** the Commissioner's Motion for Summary Judgment [Doc. 24]. The decision of the Commissioner will be **AFFIRMED**.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE